# IN THE UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK OVERTURF and CARRIE OVERTURF, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>ACUPATH LABORATORIES, INC., and GEORGE M. HOLLENBERG, M.D.,<br><br>Defendants. | Civil Action No.: 1:16CV138<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT IN CIVIL ACTION

AND NOW, come the Plaintiffs, MARK OVERTURF and CARRIE OVERTURF, husband and wife, by and through their attorneys, Jerry I, Meyers, Esquire, Brendan B. Lupetin, Esquire, and the law firm of Meyers Evans Lupetin & Unatin, LLC and files the instant Complaint in Civil Action and in support thereof avers the following:

## THE PARTIES

1. Plaintiff, Mark Overturf, is an adult individual who currently resides in Elk County, Pennsylvania, at 140 Meadowlark Lane, Kersey, PA 15846

2. Plaintiff, Carrie Overturf, is an adult individual and wife of Mark Overturf who currently resides with her husband in Elk County, Pennsylvania, at 140 Meadowlark Lane Kersey, PA 15846

3. Defendant ACUPATH LABORATORIES, INC., (hereinafter "Defendant Acupath") is a for-profit corporation organized and existing under the laws of New York that owns and operates a medical laboratory in the Commonwealth of New York and with a principal place of business at 28 South Terminal Drive, Plainview, Nassau County, New York 11803.

1

4. Plaintiff is asserting a professional negligence claim against Defendant Acupath.

5. Defendant GEORGE M. HOLLENBERG, M.D., hereinafter "Defendant Hollenberg," is a resident of Fairfield County, Connecticut, with a principal place of business at 28 South Terminal Drive, Plainview, Nassau County, New York 11803.

6. At all times relevant to the matter set forth in this Complaint, Defendant Hollenberg was licensed as a physician in the Commonwealth of New York engaged in the practice of medicine in the specialty of dermatopathology and was the medical director of Defendant Acupath.

7. Plaintiff is asserting a professional negligence claim against Defendant Hollenberg.

8. At all times relevant to the matters set forth in this Complaint, Defendant Hollenberg was the agent, servant and/or employee, ostensible or otherwise, of Defendant Acupath and was acting while in and upon the business of said Defendant and while in the course and scope of their employment by said Defendant.

## JURISDICTION AND VENUE

9. Jurisdiction over this action exists in this Court pursuant to 28 U.S.C. § 1332(a), in that complete diversity of citizenship exists, as described herein, and the amount in controversy in this matter exceeds the sum of $75,000.00, exclusive of interest and costs.

10. Venue is proper in this Honorable Court pursuant to 28 U.S.C. §1391 (c)(2) & (d) because Defendant Acupath and Defendant Hollenberg, contracted to supply medical services and did cause injury to Plaintiffs in the Commonwealth of Pennsylvania specifically within covered counties of the Western District of Pennsylvania such that 42 Pa. Consol. Stat. Ann. § 5322(a)(2) & (a)(4) applies hereto.

## OPERATIVE FACTS

11. At all times relevant hereto, Defendant Acupath held itself out as a national specialty medical laboratory comprised of nationally-recognized pathologists.

12. At all times relevant hereto, Defendant Acupath advertised that medical providers turned to Acupath, "For the Absolute Highest Standard in Pathology and Cancer Genetics."

13. At all times relevant hereto, as part of its Mission Statement, Defendant Acupath touted that its mission is to, "deliver fast, accurate pathology," and that it is "accredited by the College of American Pathologists (CAP), the Occupational Safety and Health Administration (OSHA), Joint Commission, and certified by the New York State Department of Health (DOH)."

14. At all times relevant hereto, Defendant Acupath and Defendant Hollenberg knew that healthcare providers across the country including Mark Overturf's doctors relied on the Defendants for accurate pathologic and diagnosis.

15. At all times relevant hereto, Defendant Acupath and Defendant Hollenberg knew or should have known that the characteristic clinical presentation of Eccrine Spiradenoma, was a painful, slow-growing intradermal nodule typically only found on the *head, neck or trunk*.

16. At all times relevant hereto, Defendant Acupath and Defendant Hollenberg knew or should have known that the characteristic clinical presentation of Digital Papillary Adenocarcinoma was a solitary cystic nodule exclusively found on the fingers, toes and adjacent skin.

17. Prior to January 23, 2012, Mark Overturf had a slow growing, painless, solid mass on the base of his left thumb.

18. On January 23, 2012, Mark Overturf underwent procedure which excised the 2 x 1.5 x 1 cm mass from the base of his left thumb.

19. The tissue recovered from the aforesaid procedure was submitted to and received by chief pathologist of Elk Regional Health Center, Joe Salinas, M.D., and assigned accession number "S-260-12."

20. Dr. Salinas examined the aforesaid tissue with a Hematoxylin and Eosin (H&E) stain but was unable to reach a conclusive diagnosis and determined that expert consultation was necessary.

21. Dr. Salinas in turn completed a Surgical Pathology Test Request Form for Defendant Acupath and specifically requested final consultation with dermatopathologist Defendant Hollenberg.

22. By letter dated January 24, 2012, Dr. Salinas, forwarded to Defendant Acupath and Defendant Hollenberg the excised mass - S-260-12.

23. In his correspondence, Dr. Salinas advised the Defendants that he was concerned and believed the mass to be a follicular neoplasm favoring pilomatricoma over trichoepithelioma or basal cell epithelioma and requested the Defendants "final consultation," to provide definitive diagnosis.

24. Dr. Salinas also specifically advised the Defendants that the aforesaid tissue was excised from Mark Overturf's left hand and thumb.

25. Defendant Acupath received the aforesaid tissue labeled S-260-12 on or about January 25, 2012.

26. On information and belief, Defendant Hollenberg examined Mark Overturf's excised tissue, labeled S-260-12, in Defendant Acupath's laboratory the following day, January 26, 2012.

27. During his microscopic examination of Mark Overturf's tissue, Defendant Hollenberg was able to see a cystic and papillary neoplasm with solid growth areas, morphologic atypia and mitotic figures and could not see those anatomic components characteristic of Spiradenoma.

28. Despite the features that were or should have been apparent to him characteristic of digital papillary adenocarcinoma and not characteristic of Spiradenoma, Defendant Hollenberg diagnosed Mark Overturf's excised tissue as a benign partially cystic solid Spiradenoma.

29. On January 27, 2012, Defendant Hollenberg advised Dr. Salinas that the excised tissue (which in reality was a malignant and aggressive adenocarcinoma) was a benign spiradenoma.

30. As a result of Defendant Hollenberg's misdiagnosis, Mark Overturf received no further treatment other than routine follow up visits with his orthopedic surgeon on February 3, 2012 and February 17, 2012.

31. In fact, on February 17, 2012, Mark Overturf was advised, based on the diagnosis of Defendant Hollenberg, that while recurrence of his hand lesions was possible no further studies or follow up were required.

32. As a result, Mark Overturf was wrongly led to believe that his condition was benign, required no further treatment and only necessitated follow up if there was a recurrence.

33. In fact, Mark Overturf required a radical excision of the surrounding tissue of the mass to ensure adequate safety margins.

34. At all relevant times hereto, Defendants knew or should have known that digital papillary adenocarcinoma is curable if full excision is timely performed but that there is no effective treatment if the disease is allowed to metastasize.

35. In early February 2016, Mark Overturf underwent an unrelated X-Ray of his shoulder.

36. The X-Ray incidentally revealed the presence of numerous masses in Mark Overturf's lungs.

37. Resultantly, later in February 2016, Mark Overturf underwent a biopsy by CT guided fine needle aspiration of one of the masses in his right upper lung lobe.

38. On March 2, 2016, the aforesaid biopsy was determined to be a metastatic carcinoma arising from Mark Overturf's previously excised skin mass.

39. In response, Mark Overturf's healthcare providers consulted with dermatopathologist, Mark Wick, M.D., and requested his interpretation of Mark Overturf's 2012 tissue sample – S-260-12.

40. On April 27, 2016, Dr. Wick diagnosed the 2012 excised mass - S-260-12 - as Papillary Digital Eccrine Adenocarcinoma.

41. Shortly thereafter, Mark and Carrie Overturf learned for the first time that Mark Overturf's hand mass from 2012 was, in fact, a malignant cancer which, for more than (4) years had been allowed to spread and metastasize throughout his body such that it had spread to his lungs and reached a state that is considered incurable.

## COUNT I

### Professional Negligence

**MARK OVERTURF v. ACUPATH LABORATORIES, INC., and GEORGE M. HOLLENBERG, M.D.**

42. As a result of the Defendants negligence as described herein, Mark Overturf suffered a more than four (4) year delay in the diagnosis and treatment of his malignant digital

papillary adenocarcinoma, during which time it transformed from a highly curable isolated mass to an incurable widespread disease.

43. The sole and proximate cause of the foregoing delay and spread of life-threatening disease in Mark Overturf was the negligence and carelessness of Defendant Hollenberg and Defendant Acupath and its agents, servants and/or employees, including but not limited to Defendant Hollenberg, in all or some of the following:

    a. In causing and/or permitting Papillary Digital Eccrine Adenocarcinoma to progress to incurable, malignant metastatic cancer;

    b. In failing to correctly diagnose tissue specimen, S-260-12, as Papillary Digital Eccrine Adenocarcinoma;

    c. In failing to keep abreast of current standards of care for the diagnosis of Papillary Digital Eccrine Adenocarcinoma;

    d. In reporting the tissue specimen, S-260-12, as showing only a benign partially cystic solid Spiradenoma when in fact the specimen was clearly identifiable as Papillary Digital Eccrine Adenocarcinoma;

    e. In disregarding and/or failing to consider the fact that tissue specimen S-260-12 was obtained from the base of Mark Overturf's thumb and thus was highly unlikely to be a Spiradenoma which is known to typically present on the head, neck or trunk;

    f. In failing to have tissue specimen, S-260-12 reviewed by another and/or more experienced dermatopathologist, whose review of the specimen, in keeping with the applicable standard of care, would have revealed the presence of Papillary Digital Eccrine Adenocarcinoma and the need for further follow-up, and treatment;

    g. In failing to recognize that requisite histologic and morphologic features of Spiradenoma were not present and then in failing to utilize readily accessible diagnostic criteria for the diagnosis he made;

    h. In failing to appreciate and inform Mark Overturf's physicians that adequate surgical margins had not been demonstrated and recurrence was therefore likely;

    i. As to Defendant Acupath, in failing to have adopted and assured the enforcement of such policies as appropriate for laboratories engaged in the

        cytopathologic assessment of dermatologic tissue specimens which standards are intended to make more likely the early diagnosis of Papillary Digital Eccrine Adenocarcinoma as set forth above;

    j. As to Defendant Acupath, in knowingly permitting and/or requiring dermatopathologists including Defendant Hollenberg to review an excessively high volume of tissue specimens in view of his skill level and other circumstances, thereby creating an unacceptably high risk of interpretation errors;

    k. As to Defendant Acupath, in failing to comply and/or adhere to the federal regulatory standards - specifically the requirement to implement a proper quality assurance protocol and requirement to hire personnel who are competent to perform testing and record/report results promptly, accurately, and proficiently - applicable thereto pursuant to the Clinical Laboratory Improvement Amendments (CLIA) of 1988; and

    l. As to Defendant Acupath, in failing to assure that Defendant Hollenberg maintained the requisite advertised level of diagnostic acuity.

44. As the direct and proximate result of the aforesaid negligent conduct of Defendants and/or their agents, servants, and/or employees, Mark Overturf suffered a massive delay in the diagnosis and treatment of his Papillary Digital Eccrine Adenocarcinoma which led to life-threatening and altering metastasis, which has greatly increased the risk that he would succumb to the effects of this disease including death.

45. As a further direct and proximate result of the aforesaid negligent conduct of Defendants and/or their agents, servants, and/or employees, Mark Overturf has suffered the need for chemotherapy and the complications associated therewith. The risk of Plaintiff suffering further morbidity and premature death from same was greatly increased. Some or all of these injuries are permanent in nature.

46. As a further direct and proximate result of the aforesaid negligent conduct of Defendants and/or their agents, servants, and/or employees, Mark Overturf has been caused to

endure great pain, suffering, inconvenience, and loss of enjoyment of life, and will suffer same in the future.

47. As a further direct and proximate result of the aforesaid negligent conduct of Defendants and/or their agents, servants, and/or employees, Mark Overturf has been forced to submit to medical and therapeutic care and will be forced to submit to same in the future. He has suffered scarring and disfigurement and will suffer same in the future. His health in general has been seriously and permanently impaired.

48. As a further direct and proximate result of the aforesaid negligent conduct of Defendants and/or their agents, servants, and/or employees, Mark Overturf has been forced to expend large sums of money for doctors, hospitals and other items necessary for proper care and treatment, and he will be forced to expend additional sums for like items in the future.

49. As a further direct and proximate result of the aforesaid negligent conduct of Defendants and/or their agents, servants, and/or employees, Mark Overturf has suffered a loss of sums of money he otherwise would have earned from his vocation, and he has suffered an impairment of his future earning capacity as well.

WHEREFORE, Plaintiff claims all damages recoverable under the applicable laws of this Commonwealth against Defendants in a sum in excess of the threshold amount for a board of arbitrators in this jurisdiction and demand a trial by jury.

## COUNT II

### Loss of Consortium

### CARRIE OVERTURF v. ACUPATH LABORATORIES, INC., and GEORGE M. HOLLENBERG, M.D.

50. Plaintiffs incorporate by reference and make a part of this Count all of the paragraphs of this Complaint.

9

51. As a result of the injuries to Plaintiff Mark Overturf, Plaintiff Carrie Overturf has been and/or may be deprived of her husband's aide, comfort, assistance, support, companionship, and consortium.

WHEREFORE, Plaintiff claims all damages recoverable under the applicable laws of this Commonwealth against Defendants in a sum in excess of the threshold amount for a board of arbitrators in this jurisdiction and demand a trial by jury.

**JURY TRIAL DEMANDED**

Respectfully submitted,

MEYERS EVANS LUPETIN & UNATIN, LLC

By: _____
Jerry I. Meyers, Esquire
PA I.D. #21958
Brendan B. Lupetin, Esquire
PA I.D. #201164

The Gulf Tower, Suite 3200
707 Grant Street
Pittsburgh, PA 15219
(412) 281-4100
meyers@meyersmedmal.com
blupetin@meyersmedmal.com

Attorneys for Plaintiffs